IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

FLOYCE REED PEYTON                                                                    PLAINTIFF

VS.                                    1:07-CV-002 BSM

FRED'S STORES OF ARKANSAS,
INC.                                                                                          DEFENDANT

## ORDER

After reviewing Defendant's motion for summary judgment [Doc. # 11], including all supporting documents [Docs. # 12-13, 26], Plaintiff's response to the motion for summary judgment [Doc. # 19], and all supporting documents [Docs. # 20-21], and the entire record, the court finds that Defendant's motion is well taken and should be granted.

### *I. BACKGROUND*

Defendant is part of a 650 store chain that operates throughout the southeastern United States, with roughly eighty stores in Arkansas. All the Arkansas stores operate with a store manager and some of the stores have an assistant manager. Stores without an assistant manager have an hourly support manager.

In December 2005, Plaintiff was hired as a store manager for Defendant's Heber Springs, Arkansas store. At the time that Defendant hired Plaintiff, its Heber Springs store had been without a store manager for approximately six months. Before assuming control of the Heber Springs store, Plaintiff trained at Defendant's Cabot, Arkansas store for three weeks. Upon completing her training, Plaintiff started work for Defendant on Friday, January 6, 2006. On January 9, 2006, just three days after starting work, Plaintiff was diagnosed with ovarian cancer and was unable to return to work. Defendant was notified that Plaintiff could not return to work by Plaintiff's fiancé, who presented to Defendant's assistant manager, a note from Plaintiff's doctor.

Plaintiff was hospitalized on January 12, 2006. While she was hospitalized, Defendant's district manager called Plaintiff to see how she was doing and to inquire as to how Defendant could accommodate Plaintiff. Plaintiff informed the district manager that she did not know how Defendant could accommodate her and that she would be out indefinitely. Defendant terminated Plaintiff on January 14, 2006, because Plaintiff was unable to provide a prospective return date. At the time of her illness, Plaintiff had not been employed long enough to qualify for long term disability or leave under the Family Medical Leave Act (FMLA).

Plaintiff admits that, other than the note from her physician, she submitted nothing to document her illness or to state when she could return to work. She also admits that she did not ask Defendant for any type of accommodation.

Plaintiff sued Defendant on January 22, 2007 [Doc. #1] alleging that she was terminated in violation of the Americans with Disabilities Act (ADA) and the Arkansas Civil Rights Act (ACRA). She also alleges the tort of intentional infliction of emotional distress as a result of her termination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court determines that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 323, (1986). The moving party has the initial burden of informing the court of the basis for the motion and of identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *Simpson v. Des Moines Water Works*, 425 F.3d 538 (8th Cir. 2005). The party opposing the motion for summary judgment must do more than rely on allegations or denials in the pleadings, and the elements of its prima facie case must be supported by specific facts sufficient to raise a genuine issue for trial. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249,(1986); *Skare v. Extendicare Health Servs., Inc.*, 515 F.3d 836 (8th Cir. 2008). The court must view these materials in the light most favorable to the nonmovant, drawing all inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. A genuine issue of fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Patel v. United States Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008); *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092 (8th Cir. 2007). Furthermore, to constitute a material fact the factual issue must potentially affect the outcome of the suit under the governing law. *Depositors Ins. Co.,* 506 F.3d 1092; *see also Holloway v. Pigman*, 884 F.2d 365 (8th Cir. 1989).

### III.  DISCUSSION

A.  Plaintiff's Americans with Disabilities Act Claim

The Americans with Disabilities Act prohibits an employer from discriminating against an employee due to the disability of the employee. 42 U.S.C. §12112(a) (West 2005). The act seeks to prevent employers from making hiring, advancement, or discharge decisions based upon the disability of the employee. *See id.* The ADA defines discrimination as:

> Not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless ... [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the ... [employer's] business.

*Id*. § 12112(b)(5)(A). "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id*. § 12102(2). "Otherwise qualified" means that the individual, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds or desires. *Id.* § 12111(8). Thus, to establish a claim under the ADA, Plaintiff must show (1) that she has a disability; (2) that she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that she has suffered adverse employment action because of her disability. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995) (*citing Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995)).

Given the facts of this case, the question is whether there are any issues of material fact in dispute regarding whether Plaintiff has shown that she (1) was disabled at the time Defendant terminated her, (2) was qualified to perform the essential functions of her job with Defendant with or without reasonable accommodation, at the time she was terminated, and (3) whether she suffered an adverse employment action because of her disability.  The record is pretty clear that Plaintiff has satisfied questions (1) and (3) because her termination was based on her inability to come to work as a result of her ovarian cancer.  Therefore, the key question is whether there is any dispute as to whether she was qualified to perform the essential functions of her job with Defendant.

This is a very sad case, but the court is convinced that there are no issues of material fact in dispute regarding whether Plaintiff could perform the essential functions of her job, either with or without an accommodation.  It is without question that she could not.  Essential functions are the fundamental job duties but not the marginal functions of a particular job. *Rehrs. Iams Co.*, 486 F.3d 353 (8th Cir. 2007).  Regular attendance at work is an essential function of employment. *Brannon v. Luco Mop Co.*, 521 F.3d 843 (8th Cir. 2008).  And, "an employee who is 'unable to come to work' on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones."*Moore v. Payless Shoe Source*, 139 F.3d 1210 (8th Cir.1998)(*quoting Halperin v.*

*Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997)); *see also Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir.1996) (employee who, at time of termination, could not attend work due to medical condition was not "qualified" under the ADA); *Foremanye v. Board of Cmty Coll. Trs.*, 956 F.Supp. 574, 578-79 (D.Md.1996). Furthermore, the ADA does not require an employer to provide an unlimited absentee policy. *See Buckles v. First Data Res.*, *Inc.*, 176 F.3d 1098 (8th Cir. 1999).

The record shows that, after three days of work, Plaintiff informed Defendant that she would be out indefinitely. Indeed, at the time Defendant terminated Plaintiff, Defendant had no information indicating when, if ever, Plaintiff would be able to return to work. If anything, all of the information in Defendant's possession at the time of the termination, indicated that Plaintiff would not return to work in the near future. Therefore, Plaintiff was unable to perform an essential function of her employment. For this reason, there are no issues of material fact in dispute regarding Plaintiff's ADA claim and that claim should be dismissed.

B.  Plaintiff's Arkansas Civil Rights Act Claim

Claims brought pursuant to the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.*, are analyzed using the same principles employed in analyzing claims under the ADA, *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002). Further, in an unpublished opinion, this court looked to case law interpreting the ADA in addressing the plaintiff's failure to accommodate claim under the ACRA "because both statutes refer to the right of an 'otherwise qualified person' to 'obtain and hold employment without discrimination.'" *Ragsdale v. Wolverine Worldwide, Inc.*, No. J-C-97-475, *5 n. 3 (E.D. Ark. Nov. 3, 1998) (order).

Summary judgment is appropriate on Plaintiff's ACRA claim for same reason it is

appropriate on her ADA claim; Plaintiff was unable to come to work. Therefore, she was simply unable to perform an essential function of her employment. For this reason, there are no issues of material fact in dispute regarding Plaintiff's ACRA claim and that claim should be dismissed.

C. Intentional Infliction of Emotional Distress

To succeed on an intentional infliction of emotional distress claim, the claimant must prove: (1) the actor intended to inflict emotional distress, knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous and utterly intolerable in a civilized community; (3) the conduct was the cause of the plaintiff's distress; and (4) the plaintiff's emotional distress was so severe in nature that no reasonable person could be expected to endure it. *Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761 (1996). The conduct complained of must be so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. *Neff v. St. Paul Fire & Marine Ins. Co.*, 304 Ark. 18, 799 S.W.2d 795 (1990).

As stated above, this is a sad case, but the court is convinced that there are no genuine issues of material fact in dispute and that Plaintiff's intentional infliction of emotional distress claim must be dismissed. In making this ruling, the court is guided by the opinion and logic of the Arkansas Supreme Court in the case of *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982). In that case, the plaintiff sued the defendant, his former employer, for intentional infliction of emotional distress for the outrageous manner in which the defendant fired the plaintiff. *Id.* In affirming the trial court's dismissal of the plaintiff's claim, the court held that "[i]t is for the trial court to determine, in the first instance, whether the conduct may reasonably be regarded as so outrageous as to permit recovery." *Id.* at 372 (*citing* Restatement of Torts (2d), s 46 Comment d (1965)). The court further held that

> If [plaintiff's] testimony presents an issue of fact, then any employee who is abruptly discharged by an angry boss is entitled to have the asserted tort submitted to a jury. That is not the law. The trial judge was unquestionably right in granting the partial summary judgment.

*Id.*

Although the court is mindful that this is a tort claim in which the issues to be resolved are usually highly fact intensive, it is the court's responsibility "to determine, in the first instance, whether the conduct may reasonably be regarded as so outrageous as to permit recovery." *Id.* The court specifically finds that the record shows that Defendant's actions were not extreme and outrageous and utterly intolerable in a civilized community. This is true because, at the time she was terminated, Plaintiff was unable to perform the essential functions of her job because she was unable to come to work. If the court were to find that Defendant's actions were outrageous and utterly intolerable in a civilized community, it would mean that any employee, who is discharged because she is unable to return to work due to illness or injury, would be entitled to have the her tort claim submitted to a jury. *See id.* According to the Arkansas Supreme Court, that is simply not the law in Arkansas. For these reasons, Defendant's motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim is granted.

IT IS SO ORDERED this 19th day of May, 2008.

*/s/ Brian S. Miller*
UNITED STATES DISTRICT JUDGE